UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-3419(DSD/JJG)

Hijazi Medical Supplies, a
foreign corporation, and
Riyad M. Hijazi, an individual,

       Plaintiffs,

v.                                                              **ORDER**

AGA Medical Corporation, a
Minnesota corporation, and
Amplatzer Medical Sales
Corporation, a Minnesota
corporation,

       Defendants,

v.

Ziyad Hijazi,

       Counter-Defendant.


    Ronald K. Gardner, Jr., Esq., Melanie P. Persellin, Esq. and Dady & Garner, 80 South Eighth Street, Suite 5100, Minneapolis, MN 55402, counsel for plaintiffs.

    Anh Le Kremer, Esq., Linda L. Holstein, Esq. and Holstein Kremer, 150 South Fifth Street, Suite 3550-PH, Minneapolis, MN 55402 and Thomas S. Fraser, Esq. and James R. Mayer, Esq. and Fredrikson & Byron, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, counsel for defendants.

    Eric P. Sparks, Esq., Paul W. Carroll, Esq. and Gould & Ratner, 222 North LaSalle Street, Suite 800, Chicago IL 60601, counsel for counter-defendant.


    This matter is before the court on counter-defendants' partial motions to dismiss.  After a review of the file, record and

proceedings herein, and for the following reasons, counter-defendants' motions are granted.

## BACKGROUND

This federal diversity action arises out of a business relationship between counterclaimant AGA Medical Corporation ("AGA") and Hijazi Medical Supplies ("HMS"), Riyad Hijazi ("Riyad") and Dr. Ziyad Hijazi ("Ziyad")(collectively "counter-defendants"). AGA develops and manufactures medical devices for use in cardiovascular applications that are distributed in over ninety countries. (Countercl. ¶¶ 115, 123.) Riyad is president of HMS - a distributor of medical equipment - and Ziyad is a physician who engaged in discussions with AGA on behalf of HMS and Riyad. (Id. ¶¶ 116-18.)

In 2005, AGA learned that its China distributor, Beijing Since Medical Scientific Co., Ltd. ("BSMS"), and BSMS's owners and operators, Dr. Larry Meng[1] ("Larry") and Dr. Biao Meng ("Biao"), had likely violated the Foreign Corrupt Practices Act ("FCPA"). AGA conducted an internal investigation that resulted in a voluntary disclosure to the United States Department of Justice and a subsequent investigation. AGA terminated BSMS's distributorship on April 12, 2006, because of BSMS's failure to pay for products received and concerns about the FCPA violations.

---

[1] Also known as "Jian Meng."

2

Meanwhile, AGA and HMS had entered into a Distributor Agreement ("Agreement") on October 20, 2004, appointing HMS as an exclusive distributor of certain AGA products for five years in Jordan, Bahrain, Iran, Iraq, Lebanon, Oman, Qatar, U.A.E., Egypt, Alyemen, Syria, Libya, Palestine and Sudan.  (See id. ¶ 124.) Pursuant to the Agreement, between October 2004 and April 2007, AGA supplied products to HMS that Ziyad had typically ordered on behalf of HMS.

In December 2005, AGA informed Ziyad of its concerns with BSMS, the pending investigation and its objection to any shipment of AGA products to BSMS or any of its affiliates.  Ziyad acknowledged AGA's concerns and indicated he would discuss their resolution with Larry.

In August and December 2006, after being informed of AGA's termination of BSMS, AGA denied Ziyad's requests for appointment of HMS as AGA's China distributor.  Unbeknownst to AGA, however, between 2005 and 2007 HMS had been shipping and continued to ship AGA products to Since International Development, Ltd. ("SID") - a company operating out of Hong Kong that was owned in whole or in part by Larry and Biao.  On April 3, 2007, AGA informed HMS in writing that it had discovered certain AGA products in a hospital in China that had been shipped to HMS under the Agreement.  In response to AGA's demand for an explanation, HMS denied shipping AGA products to China.  HMS later admitted that it had shipped AGA

products to SID in Hong Kong, which it did not consider to be a part of China.  HMS also indicated initially that SID was a completely different entity from BSMS.  As a result of HMS's actions, AGA expanded its internal investigation into its distribution system and made another disclosure to the Department of Justice.  On April 13, 2007, AGA sent a Notice of Termination to HMS, noting that HMS had breached the Agreement by shipping to China on at least sixteen occasions between August 2005 and February 2007 and had concealed those shipments by shipping AGA's products to the "duty-free zone" in Jordan and labeling them "Jordan in transit."

On July 20, 2007, HMS and Riyad filed a complaint against AGA and its wholly owned subsidiary Amplatzer Medical Sales Corporation.  AGA answered and counterclaimed against HMS, Riyad and Ziyad on August 3, 2007, asserting six counts - including one count for "fraud and misrepresentation and conspiracy to commit fraud and misrepresentation."  Ziyad filed a partial motion to dismiss AGA's fraud claim on October 22, 2007.  HMS and Riyad moved for partial judgment on the pleadings on AGA's fraud claim on November 15, 2007.[2]

---

[2] The pleadings are not closed because HMS and Riyad have not filed a reply to the counter-claim.  Therefore, the court will construe their motion as a partial motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  See Fed. R. Civ. P. 12(c) (requires pleadings to be closed); Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (Rule 12(c) standard
(continued...)

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint for failing to state a claim upon which relief may be granted if, after taking all facts alleged in the complaint as true, it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. See Fed. R. Civ. P. 12(b)(6); Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 937 (8th Cir. 2005). Dismissal under Rule 12(b)(6) is only warranted "in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004).

Counter-defendants move to dismiss AGA's fraud and conspiracy to commit fraud claim arguing that under the alleged facts AGA cannot state a claim for fraud and that even if AGA could state a claim for fraud it has not done so with the requisite particularity.

---

[2](...continued)
of review same as Rule 12(b)(6)).

**A.   Failure to State a Claim for Fraud**

Under Minnesota law,[3] the elements of common law fraud are (1) a false representation of material fact, (2) knowledge of the representation's falsity by the person making the representation, (3) intent that another person relies on the false representation or circumstances justifying reliance by the other person, (4) reasonable reliance on the false representation and (5) damages attributable to the false representation. In re Strid, 487 N.W.2d 891, 893-94 (Minn. 1992). Counter-defendants argue that AGA has not alleged a false statement, reliance upon a false statement or damages attributable to the false statement.

First, counter-defendants argue that AGA has not alleged a false representation because the Agreement permits sales to China by not explicitly prohibiting them. AGA alleges that counter-defendants made false representations in the performance of the Agreement by ordering product ostensibly for the territory identified in the Agreement but actually intended for China; by labeling products shipped to the "duty free zone" in Jordan as "Jordan in transit" and asking for "Egypt prices," thus allowing

---

[3] The Agreement is governed by Minnesota law, and the parties cite primarily to Minnesota law in their briefs. (Countercl. ¶ 132.) Therefore, the court will apply Minnesota law. See Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1392 (8th Cir. 1997) (under Minnesota law, choice-of-law provision governs non-contract claims if claims "are closely related to the interpretation of contract and fall within the ambit of the express agreement").

the product to pass directly through to China; and by providing sales reports misrepresenting sales to China. Moreover, AGA alleges that counter-defendants falsely denied shipping AGA products to China, falsely denied dealing with anyone in China and falsely denied that SID was closely affiliated with BSMS. Counter-defendants' maintain that because they were permitted to ship AGA's product anywhere, there was nothing for them to misrepresent. The court disagrees.

Even if the Agreement implicitly permitted sales to China, HMS's alleged representations falsely indicated that some of the products it ordered would be and were shipped to the area contemplated by the Agreement when in fact HMS shipped them to China. Moreover, AGA alleges facts that may have created a duty for Ziyad to disclose that HMS was shipping AGA products to China. Generally, "one party to a transaction has no duty to disclose material facts to the other." Klein v. First Edina Nat'l Bank, 196 N.W.2d 619, 622 (1972). However, "one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party." Id. In this case, Ziyad allegedly knew both that HMS was shipping products to SID and that AGA had problems with and eventually terminated BSMS. This knowledge may have created a duty to disclose that if not met would satisfy the false representation requirement. See Karlstad State Bank v. Fritsche, 392 N.W.2d 615, 618 (Minn. Ct.

App. 1986) ("The concealment of a material fact can also constitute fraud.").

Second, counter-defendants argue that AGA did not reasonably rely on any alleged misrepresentations. Although AGA's counterclaim merely states that it "reasonably relied on [the alleged] misrepresentations to its detriment," other sections of the counterclaim clarify AGA's alleged reliance. (Countercl. ¶ 173.) Specifically, AGA indicates that it relied on counter-defendants' allegedly false statements by continuing to ship its products to HMI with the understanding that HMI was only distributing the product in the area contemplated by the Agreement. (See id. ¶ 143-44.) Nevertheless, counter-defendants maintain that any such reliance would have been unreasonable because AGA had a pre-existing duty to ship AGA products to HMI and could not have refused shipment under the Agreement.

Even assuming counter-defendants' interpretation of the contract is correct, a pre-existing duty would not make AGA's continued shipment of its product to HMI unreasonable. In fact, according to counter-defendants' interpretation, it would have been unreasonable for AGA not to continue shipping its product because failure to do so would have breached the Agreement. Conversely, it would have been reasonable for AGA to continue shipping its product to HMI upon HMI's representations that the product was being shipped to the area explicitly stated in the Agreement.

8

Finally, counter-defendants argue that any alleged misrepresentations and reliance on those misrepresentations did not damage AGA. AGA, however, alleges that as a result of AGA products being shipped into China it had to make additional disclosures to the Department of Justice and expand its internal investigation. (Id. ¶ 145.) Moreover, AGA alleges loss of goodwill, business reputation and profits all stemming from the distribution of its products in China. (Id. ¶ 146.) These allegations, if proven by AGA, would adequately support damages resulting from counter-defendants' alleged misrepresentations. Therefore, the court determines that the facts alleged by AGA could support a claim for fraud.[4] Still at issue, however, is whether AGA stated those facts with particularity.

**B.   Particularity**

Federal Rule of Civil Procedure 9(b) provides that a claim of fraud must be pleaded with particularity. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). To satisfy

---

[4] Counter-defendants also argue that even if the Agreement prohibited sales to China a breach of contract does not constitute fraud. AGA, however, does not merely allege a breach of contract. Rather, AGA alleges that counter-defendants made affirmative misrepresentations to conceal shipments of AGA products to China. Therefore, AGA has asserted a tort independent of the breach of contract. In other words, HMS would have a duty independent of any contract not to misrepresent where it intended to ship or where it actually shipped the products it ordered from AGA. See Hanks v. Hubbard Broad., Inc., 493 N.W.2d 302, 308 (Minn. App. 1992) (tort is independent of contract if "a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself").

9

the heightened pleading requirements, a plaintiff must set forth the "who, what, when, where, and how" of an alleged fraud. United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006). In other words, a plaintiff must plead "the time, place and contents" of the false representations, the identity of the individual who made the representations and what was obtained thereby. BJC Health Sys., 478 F.3d at 917. Moreover, where fraud claims are alleged against more than one defendant "each defendant is entitled to know the particular allegations of fraud it allegedly committed." Daher v. G.D. Searle & Co., 695 F. Supp. 436, 440 (D. Minn. 1988). The heightened pleading requirements in fraud claims enable defendants to respond promptly and specifically to potentially damaging allegations. Id. The requirements of Rule 9(b) must be read "in harmony with the principles of notice pleading," and the level of particularity required depends upon the nature of a case. Id. (internal quotations omitted). However, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. (internal quotations omitted).

Counter-defendants argue that AGA's fraud claim fails for lack of particularity because it does not identify particular speakers of any alleged misrepresentation, particular persons to whom a misrepresentation was made, when or where the alleged misrepresentations were made, the specific content of the alleged

misrepresentations and what actions AGA took in reliance on the alleged misrepresentations.[5]  The court agrees that AGA's fraud claim lacks the requisite particularity.

In its fraud claim AGA generically refers to counter-defendants as "Plaintiffs" without indicating which individual or entity is responsible for the allegedly false statement.  Although certain statements are attributable to individual counter-defendants through reference to other portions of the counterclaim, not all statements are identifiable.  This lack of particularity fails to satisfy Rule 9's requirements.

Further, although some of the allegations in the counterclaim are specific as to the time, place and contents of the alleged false representations, others do not contain the requisite particularity.  Specifically, the counterclaim indicates that counter-defendants provided certain written reports containing false representations, but it fails to identify when between 2005 and 2007 the reports were made or to specify the contents of those reports.  Moreover, the counterclaim alleges that certain shipments were labeled "Jordan in transit" and that counter-defendants asked for "Egypt prices," but it fails to identify when and where those

---

[5] The court notes that counter-defendants do not challenge the adequacy of the pleadings with respect to the alleged conspiracy. Therefore, the court limits its analysis to the alleged fraud underlying the conspiracy.  See Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950) ("[T]he gist of the action is not the conspiracy charged, but the tort working the damage to the plaintiff.").

11

shipments were made.[6]  Although the time, place and contents of all of the allegedly false representations may be difficult to discern at the pleading stage, many of the general allegations in AGA's counterclaim severely limit counter-defendants' ability to adequately respond.  Therefore, the court determines that AGA has failed to plead its fraud claim with particularity.[7]

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that:

1. Counter-defendants' motions to dismiss AGA's fraud claim [Doc. Nos. 15 and 25] are granted;

2. Count six of the counterclaim is dismissed without prejudice;

---

[6] Paragraph 142 of the counterclaim indicates that HMS shipped AGA product to China on at least sixteen occasions, but it fails to further identify those shipments.

[7] The court also notes its concern with AGA's conclusory statement that it "reasonably relied on the[] misrepresentations to its detriment." (Countercl. ¶ 173.) Although the court determines that allegations in other sections of the counterclaim allow counter-defendants to understand the nature of AGA's reliance, prudence would dictate strengthening the reliance allegations as they specifically relate to the fraud claim if AGA chooses to move for leave to amend its counterclaim.

3.  AGA may seek leave to amend its counterclaim to replead its fraud claim consistent with the April 15, 2008, deadline in the pretrial scheduling order [Doc. No. 14].

Dated:  February 11, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court
